**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 15-cv-02835-NYW

LILAFERN KADINGO,

     Plaintiff,

v.

LYNN A. JOHNSON, in her official capacity as director of the Jefferson County
Department of Human Services, and
SUSAN E. BIRCH, in her official capacity as Executive Director of the Colorado
Department of Health Care Policy and Financing,

     Defendants.

---

## MEMORANDUM OPINION AND ORDER

---

Magistrate Judge Nina Y. Wang

     This matter comes before the court on Defendants Lynn A. Johnson and Susan E. Birch's (collectively, "Defendants") Joint Motion to Dismiss First Amended Complaint (the "Motion to Dismiss"). [#42, filed July 13, 2016]. The Motion to Dismiss is before the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(c) and the Order Referring Case dated January 29, 2016 [#16]. After carefully considering the Motion to Dismiss and associated briefing, the entire case file, the applicable case law, and the comments offered during the September 15, 2016 Motion Hearing, the Motion to Dismiss is GRANTED IN PART and DENIED IN PART.

## BACKGROUND

     On December 11, 2015, Plaintiff Lilafern Kadingo ("Plaintiff" or "Ms. Kadingo") commenced this action in the District Court of the City and County of Denver. *See* [#1 at 1].

Defendants filed their Notice of Removal in the federal district court for the District of Colorado on December 30, 2015, pursuant to 28 U.S.C. § 1331, because Plaintiff's Complaint alleged violations of her constitutional rights and sought relief under 42 U.S.C. § 1983. [*Id.* at 2]. However, on January 29, 2016, the court granted the Parties a 60-day stay, eventually extended to 90 days, of the proceedings to pursue settlement negotiations. *See* [#17; #22].

Because settlement negotiations were unsuccessful, Defendants responded to Plaintiff's Complaint with their first Joint Motion to Dismiss Plaintiff's Complaint on May 10, 2016. [#28]. The court denied as moot Defendants' first Joint Motion to Dismiss in light of Plaintiff's notice of filing the First Amended Complaint with Defendants' consent. [#39]. On June 29, 2016, Plaintiff filed her First Amended Complaint [#38], which remains the operative Complaint in this matter.

Plaintiff's First Amended Complaint alleges that she is a ninety-two (92) year old woman who "is incapacitated with dementia and physical disabilities." [#38 at ¶ 1–2]. Plaintiff currently resides in a nursing home in Thornton, Colorado, and her son, John Kadingo, "holds a durable power of attorney for [her]." [*Id.* at ¶¶ 3–5]. Plaintiff's husband, Hubert Kadingo, passed away on May 16, 2011, and through his will he devised one-half of his estate via the Lilafern Kadingo Trust (the "Trust") to Plaintiff and one-half via a separate trust to his children. [*Id.* at ¶¶ 6–7].[1] The Trust is a pure discretionary trust that granted sole and absolute discretion to the trustee regarding distributions to Plaintiff, the sole beneficiary of the Trust. [*Id.* at ¶ 11].

---

[1] The Jefferson County District Court probated Hubert Kadingo's will in Case No. 2011PR0776. [#38 at ¶ 8]. Hubert Kadingo's estate consisted of a residence located in Arvada, Colorado, which served as Plaintiff's primary residence for several years. [#38 at ¶ 9]. On or about September 14, 2011, John Kadingo, as Personal Representative of Hubert Kadingo's estate, deeded a one-half interest in the residence to the Trust. [*Id.* at ¶ 10]. Plaintiff alleges that at the time of the transfer, she intended to use the property as her primary residence. [*Id.* at ¶ 22].

Further, Plaintiff alleges that the Trust did not constitute a property interest of Plaintiff's under Colorado law, that the Trust did not constitute a countable resource under state or federal Medicaid law, and that the Trust is a proper "third party trust" that is "not countable under Colorado law as a 'third party trust' because it had a sole and absolute discretionary standard." [*Id.* at ¶¶ 12–15].

In November 2011, Innovage[2] prepared and filed a Medicaid application on behalf of Plaintiff as her authorized representative.  [*Id.* at ¶¶ 16–21].  Plaintiff alleges that prior to receiving Medicaid benefits she spent all of her cash assets, with her only asset being a one-half interest in the residence—an exempt homestead under state and federal law.  [*Id.* at ¶¶ 23–25].  Further, that she was not required to sell her residence under Medicaid laws or regulations, and that it was Innovage's responsibility to report her residence and the Trust on her Medicaid application.  [*Id.* at ¶¶ 26–27].  Nevertheless, Plaintiff contends her residence and the Trust would not have affected her eligibility for Medicaid, even if properly reported in November 2011.  [*Id.* at ¶ 28].  Ultimately, Plaintiff sold her residence and informed Jefferson County of the sale on multiple occasions.  [*Id.* at ¶¶ 32–34].

On July 16, 2014, Leanne Gardner of the Colorado Department of Health Care Policy and Financing ("CDHCPF") informed John Kadingo that Plaintiff received an overpayment of $98,703.52 in Medicaid benefits, and that the CDHCPF sought only to recover that overpayment. [*Id.* at ¶ 35].  Plaintiff alleges that Ms. Gardner never mentioned a "transfer without fair consideration."  [*Id.*].  Then, on or about July 25, 2014, the Jefferson County Department of

---

[2] This court will use the spelling as reflected in Plaintiff's Amended Complaint [#38 at ¶ 16], but notes that the website associated with Innovage uses "InnovAge" as the spelling of the corporate name.  *See* www.myinnovage.org.

Human Services ("JCDHS") sent Plaintiff a notice (the "July 2014 notice") that she was "over resourced;" however, according to Plaintiff, the notice was deficient as it cited an incorrect regulation and was sent directly to Innovage who did not forward it to Ms. Kadingo. [*Id.* at ¶¶ 37–39]. The JCDHS informed Ms. Kadingo's attorney that they could not send an additional notice, as they can only send notices to one address. [*Id.* at ¶ 40].

An Administrative Law Judge ("ALJ") conducted a hearing on the July 2014 notice, on July 17, 2015 and again on August 10, 2015 via telephone. [*Id.* at ¶ 41; #51-1 at 4]. Following the hearings, the ALJ concluded that the July 2014 notice was defective; however, the ALJ considered the merits of Plaintiff's case on the theory of transfer without fair consideration rather than over-resourced. [*Id.* at ¶ 42]. The ALJ concluded that there was a transfer without fair consideration in the amount of $87,000 based solely on his review of past, not future, expenditures from the Trust. [*Id.* at ¶ 46]. Ultimately, the ALJ issued Plaintiff a future disqualification of benefits penalty rather than a past disqualification that Plaintiff alleges is required by federal and state law. [*Id.* at ¶ 47; #47-4 at 1 (the ALJ imposed a fourteen-month disqualification period to begin upon entry of the Final Agency Decision)].

Plaintiff alleges that this hearing violated her due process rights. [*Id.* at ¶ 43]. First, the hearing was fundamentally unfair, as Plaintiff did not receive proper advance notice of the basis for the alleged overpayment. [*Id.* at ¶ 44]. Next, Plaintiff alleges that the ALJ applied the wrong standard of proof in the case and improperly shifted the burden of proof on Plaintiff rather than the JCDHS. [*Id.* at ¶ 45]. In addition, Plaintiff did not have the opportunity to contest the penalty methodology used by the ALJ, because "issues of state and federal law are beyond the jurisdictional authority of the [ALJs] in Colorado." [*Id.* at ¶ 47]. Plaintiff filed a motion for an

extension of time to appeal the ALJ's decision on September 8, 2015, which the Office of Appeals of CDHCPF denied. [*Id.* at ¶ 48]. Thus, the CDHCPF issued a Final Agency Decision on October 30, 2015, affirming the ALJ's decision and imposing the fourteenth-month disqualification period as of the date of its order. *See* [#47-4 at 3].

Then, on June 14, 2016, the JCDHS issued a new notice ("June 2016 notice") to Plaintiff, imposing the fourteen-month disqualification period set to run from July 1, 2016 to August 31, 2017. [#38 at ¶ 50]. The reason for imposing the fourteen-month penalty was Plaintiff's transfers without fair consideration based on her failure "to elect against her spouse's estate and [her failure] to obtain a family allowance and exempt property allowance from her spouse's estate." [#38 at ¶ 51]. Apparently, the June 2016 notice was an attempt to cure the deficiencies of the July 2014 notice, but was not a new notice that Plaintiff could appeal on the merits. *See* [#51-1 at 4–5]. And, on October 25, 2016, the ALJ dismissed Plaintiff's appeal of the June 2016 notice, because the ALJ had already heard the case and the CDHCPF already issued a Final Agency Decision on the matter. [*Id.* at 5].

Though not entirely clear, Plaintiff's First Amended Complaint asserts five claims against Defendants and seeks declaratory relief under Rule 57 of the Federal Rules of Civil Procedure as well as reasonable attorney's fees under 42 U.S.C. § 1988. [#38 at 27–30]. It appears that Plaintiff seeks a declaratory judgment that Defendants: (1) violated federal law, specifically 42 U.S.C. §§ 1396p(c)(2)(B)(i), 1396p(d)(2)(A), 1396a(a)(18), with their policy and practice of interpreting a spouse's failure to elect against the decedent spouse's will as a transfer without consideration, infringing her rights to a testamentary trust that would be exempt from

consideration under Medicaid ("Claim I")[3]; (2) violated 42 U.S.C. § 1396p(c)(1)(E)(i)(I), by failing to treat Mr. Kadingo's testamentary trust as equivalent to an elective-share trust under Colorado law and assessing a transfer penalty ("Claim II"); (3) violated 42 U.S.C. § 1396p(c)(1)(D)(ii),[4] because the ALJ ignored the state regulations and arbitrarily implemented the disqualification penalty in contravention of federal law by utilizing a start date that was not the first day of the month during or after the date in which assets were transferred ("Claim III"); (4) violated 42 U.S.C. § 1396a(a)(3) and the Fourteenth Amendment of the United States Constitution, because they provided Plaintiff deficient notice of the termination of her Medicaid benefits and failed to provide her a fair and impartial hearing, and seeking a declaration that 10 C.C.R. 2505.10, 8.057.8.D and 8.057.8.E are unconstitutional ("Claim IV"); and (5) violated 42 U.S.C. § 1396p(c)(2)(C) with their policy and practice of applying transfer penalties when an individual fails to elect against their deceased spouse's will with reasons "other than to qualify for medical assistance" ("Claim V").   *See* [*id.* at 15–26].   The claims interweave facial challenges to the state Medicaid regulations, as well as particular challenges to the manner in which Ms. Kadingo's case was adjudicated.   [#38].

Defendants filed their Motion to Dismiss on July 13, 2016.   [#42].   Plaintiff filed a response and Defendants a reply.   *See* [#47; #48].   On September 15, 2016, the court held oral

---

[3] Ms. Kadingo identifies her claims using letters, but this court utilizes numbers to identify the claims.

[4] As Defendants accurately notes, Plaintiff cites to 42 U.S.C. § 1396p(c)(D)(ii) in her Amended Complaint [#38 at 20]; however, such a section does not exist.   Therefore, Defendants, as well as the court, interpret Plaintiff's second claim to allege a violation of 42 U.S.C. § 1396p(c)(1)(D)(ii).

argument on the Motion to Dismiss and took the motion under advisement. [#49]. The Motion

to Dismiss is ripe for resolution, and the court considers the Parties' arguments below.

**LEGAL STANDARDS**

I.      **Rule 12(b)(1)**

Federal courts are courts of limited jurisdiction and, as such, "are duty bound to examine

facts and law in every lawsuit before them to ensure that they possess subject matter

jurisdiction." *The Wilderness Soc. v. Kane Cty., Utah*, 632 F.3d 1162, 1179 n.3 (10th Cir. 2011)

(Gorsuch, J., concurring). Indeed, courts have an independent obligation to determine whether

subject matter jurisdiction exists, even in the absence of a challenge from any party. *Image

Software, Inc. v. Reynolds & Reynolds, Co.*, 459 F.3d 1044, 1048 (10th Cir. 2006) (citing

*Arbaugh v. Y & H Corp.*, 546 U.S. 500 (2006)).

For purposes of Rule 12(b)(1), "mootness is a matter of jurisdiction. . . ." *McClendon v.

City of Albuquerque*, 100 F.3d 863, 867 (10th Cir. 1996). A case becomes moot if an event

occurs during the pendency of the action that "makes it impossible for the court to grant any

effectual relief whatever to a prevailing party." *Church of Scientology of Calif. v. United States*,

506 U.S. 9, 12 (1992) (internal quotations omitted). This court must first turn to Defendants'

argument with respect to subject matter jurisdiction, because without subject matter jurisdiction,

the court may not reach the issue as to whether Plaintiff states a claim for Count IV. *See

Cunningham v. BHP Petroleum Great Britain PLC*, 427 F.3d 1238, 1245 (10th Cir. 2005)

("Simply put, once a federal court determines that it is without subject matter jurisdiction, the

court is powerless to continue.") (citation omitted).

II.     **Rule 12(b)(6)**

Under Rule 12(b)(6) a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a motion under Rule 12(b)(6), the court must "accept as true all well-pleaded factual allegations . . . and view these allegations in the light most favorable to the plaintiff." *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010) (quoting *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)). However, a plaintiff may not rely on mere labels or conclusions, "and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Rather, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009); *see also Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (explaining that plausibility refers "to the scope of the allegations in a complaint," and that the allegations must be sufficient to nudge a plaintiff's claim(s) "across the line from conceivable to plausible.").

The ultimate duty of the court is to "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007). Should the court receive and consider materials outside the complaint, the court may convert a Rule 12(b)(6) motion to a motion for summary judgment if the parties have notice of the changed status and the nonmovant responded by supplying its own extrinsic evidence. *See Alexander v. Oklahoma*, 382 F.3d 1206, 1214 (10th Cir. 2004). However, a district court may consider legal arguments contained in a brief in opposition to dismissal or documents referred to in the complaint that are central to a plaintiff's claim if the Parties' do not dispute their authenticity

without converting the Rule 12(b)(6) motion into a summary judgment motion. *See Cty. of Santa Fe, N.M. v. Public Serv. Co. of N.M.*, 311 F.3d 1031, 1035 (10th Cir. 2002). In addition, the court may consider documents subject to judicial notice,[5] including court documents and matters of public record. *See Tal v. Hogan*, 453 F.3d 1244, 1264 n. 24 (10th Cir. 2006); *Hernandez v. Asset Acceptance, LLC*, 970 F. Supp. 2d 1194, 1197 n.1 (D. Colo. 2013) (noting that it is appropriate for the court to take judicial notice of the pleadings and decision in a prior case involving the same parties on a motion to dismiss based on claim preclusion).

## ANALYSIS

### I. Mootness as to Claim IV

Though it is argued as an alternative ground and only pertains to Claim IV, the court first considers whether it has subject matter jurisdiction over Plaintiff's due process challenge to the deficiency of the July 2014 notice and to the constitutionality of certain sections of the Colorado Code of Regulations, 10 C.C.R. 250510; § 8.057.8.D. and § 8.057.8.E, in prohibiting petitioners from arguing that a rule or regulation violates state, federal, or constitutional law before an ALJ. Defendants contend that the June 2016 notice superseded the July 2014 notice and, therefore, Plaintiff's fourth claim for relief is moot. [#42 at 34].

Mootness is a threshold issue as federal court jurisdiction depends on a live case or controversy—without a live, concrete controversy, the court cannot consider the plaintiff's claim(s) no matter how meritorious. *Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1110 (10th Cir. 2010). "If an intervening circumstance deprives the plaintiff of a

---

[5] *See* Fed. R. Evid. 201(b)(2) (A court may take judicial notice of a fact "that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot be reasonably questioned.").

personal stake in the outcome of the lawsuit, at any point during litigation, the action can no longer proceed and must be dismissed as moot." *Brown v. Buhman*, 822 F.3d 1151, 1165 (10th Cir. 2016) (internal quotations omitted) (quoting *Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523, 1528 (2013)). Thus, the inquiry focuses on whether the court's determination of the issues will have "some effect in the real world." *Wyoming v. U.S. Dep't of Agric.*, 41 F.3d 1207, 1212 (10th Cir. 2005) (internal quotations and citation omitted). However, there is an exception to mootness when the defendant voluntarily ceases the challenged conduct for purposes of evading judicial review, but is free to continue the challenged conduct once the court dismisses the case as moot. *Brown*, 822 F.3d at 1166. The defendant bears the "formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Already, LLC v. Nike, Inc.*, 133 S. Ct. 721, 727 (2013) (internal quotations omitted) (quoting *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 190 (2000)).

Defendants argue that the June 2016 notice cures any deficiencies in the July 2014 notice, and that they have met their burden that the alleged wrongful behavior could not reasonably be expected to recur given that Plaintiff cannot again fail to elect against her spousal share, her exempt property allowance, or her family allowance. [#42 at 33–35]. Contrary to Defendants' assertions, the court concludes that the issuance of the subsequent June 2016 notice does not moot Plaintiff's due process claim. As an initial matter, it appears that a primary reason for issuing a new notice was to moot Plaintiff's due process claim. *Cf. McCormack v. Hiedeman*, 900 F. Supp. 2d 1128, 1139 (D. Idaho 2013) (holding that "a party cannot conjure up mootness by ceasing the challenged conduct only for practical or strategic reasons—such as avoiding

litigation."). Although not binding on this court, the court finds the case *Elkins v. Dreyfus* persuasive in this matter. No. C 10-1366 MJP, 2010 WL 3947499, at *3 (W.D. Wash. Oct. 6, 2010). In *Elkins*, the United States District Court for the Western District of Washington held that the defendant's issuance of new termination of benefits notices did not moot the plaintiffs' claims that the initial notices were inadequate under due process standards. *Id.* (holding that the defendant failed to satisfy the heavy burden of showing that the challenged conduct would not repeat, despite issuing new notices that cured some deficiencies in the old notices). Moreover, that same court also held that "[a] new notice is only effective if the recipient has his full rights restored and a new notice mailed out prior to retermination." *Elkins v. Dreyfus*, No. C10-1366 MJP, 2011 WL 3438666, at *6 (W.D. Wash. Aug. 5, 2011).

Here, Defendants issued the new notice well after the CDHCPF's decision to impose a fourteen-month ineligibility period on Plaintiff, and nearly six months after Plaintiff filed this suit. *See id.* (holding that the new notice, sent after the termination was effective, did not bar the plaintiffs' from pursuing their due process claims). In addition, upon issuance of the new notice, Defendants argued for dismissal of Plaintiff's appeal on preclusion grounds, because the ALJ had already heard Plaintiff's case. And Defendants conceded that they did not intend the new notice to give Plaintiff a new opportunity to appeal her case on the merits. [#51-1 at 4]. Moreover, the ALJ noted as much in the October 25, 2016 initial decision regarding the new notice stating, "[i]t seemed to the ALJ that there was no real intention to provide an appeal on the merits from the June 14, 2016 notice. Instead, the June 2016 notice appeared to him to be a tactic to eliminate the issue of notice from the federal appeal." [#51-1 at 4]. Nevertheless, the ALJ still dismissed Plaintiff's appeal of the new notice. [*Id.* at 5].

Based on the foregoing, the court concludes that the relief sought by the Plaintiff will have an impact in the real world, and that it is not absolutely clear that Defendants did not change course "simply to deprive the court of jurisdiction." *Rio Grande Silvery Minnow*, 601 F.3d at 1115 (internal quotations and citation omitted).  In addition, Plaintiff appears to challenge the legality of certain provisions of the Colorado Code of Regulations—issues beyond the contents of a particular notice as applied to Plaintiff.  Accordingly, this court declines to find that Claim IV is moot and, thus, concludes that it has subject matter jurisdiction to consider whether Claim IV states a cognizable claim that may be pursued by Plaintiff.

## II.      Issue and Claim Preclusion

This court now turns to Defendants' arguments that they are entitled to dismissal of this action because the claims are subject to preclusion based on Plaintiff's conduct in the administrative proceeding.  Two similar bases for dismissal pursuant to Rule 12(b)(6) are claim and issue preclusion.  *See, e.g.*, *Knight v. Mooring Capital Fund, LLC*, 749 F.3d 1180, 1185 (10th Cir. 2014).  Federal courts must give full faith and credit to state court judgments, *see* 28 U.S.C. § 1738; *Pittsburgh Cty. v. City of McAlester*, 346 F.3d 1260, 1276 (10th Cir. 2003), which may include administrative actions, *Terrones v. Allen*, 680 F. Supp. 1483, 1486 (D. Colo. 1988).  A federal court will grant preclusive effect to an agency's decision when the agency (1) acts in a judicial capacity; (2) resolves factual disputes properly before it; and (3) the parties had "an adequate opportunity to litigate" the issue(s).  *Salguero v. City of Clovis*, 366 F.3d 1168, 1173 (10th Cir. 2004) (quoting *Univ. of Tenn. v. Elliot*, 478 U.S. 788, 798 (1986)).  In doing so, federal courts grant preclusive effect to that decision under the preclusion doctrines of the state where the agency sits, *i.e.*, Colorado law in this matter.  *Id.*

Under Colorado law, claim preclusion applies to a second judicial proceeding when there exists:  (1) finality of the first judgment; (2) identity of subject matter; (3) identity of claims for relief; and (4) identity of or privity between the parties to the two actions.  *See Burlington Ditch Reservoir & Land Co. v. Metro Wastewater Reclamation Dist.*, 256 P.3d 645, 668 (Colo. 2011). Similarly, issue preclusion bars relitigation of an issue decided in a previous proceeding when: (1) the issue precluded is identical to an issue actually litigated and necessarily adjudicated in the previous proceeding; (2) the party against whom estoppel is sought was a party to or was in privity with a party to the previous proceeding; (3) there was a final judgment on the merits in the previous proceeding; and (4) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issues in the previous proceeding.  *See Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Guar. Bank & Trust Co.*, No. 13-CV-00926-LTB-KLM, 2015 WL 920578, at *3 (D. Colo. Mar. 2, 2015) (citing *In re Water Rights of Elk Dance Colo., LLC*, 139 P.3d 660, 667 (Colo. 2006)).

Defendants argue for the dismissal of Plaintiff's First Amended Complaint, because issue and claim preclusion bar re-litigating Plaintiff's claims.  *See* [#42 at 4–5].  Specifically, Defendants aver that Plaintiff's claims were either already decided by the ALJ in the underlying administrative action or were claims that Plaintiff should have alleged on appeal to the Office of Appeals of the CDHCPF or the Denver District Court.  *See* [*id.* at 9, 12].  For the following reasons, the court respectfully disagrees.

### A.   Issue Preclusion[6]

Issue preclusion bars the re-litigation of issues actually litigated and decided in a prior proceeding, and is not limited to identical claims for relief but may "apply to causes of action that are different from those raised in the original proceeding." *Gallegos v. Colorado Ground Water Comm'n*, 147 P.3d 20, 32 (Colo. 2006) (citations omitted). As discussed, this applies to administrative actions as well. *Indus. Comm'n of the State of Colo. v. Moffat County Sch. Dist. Re No. 1*, 732 P.2d 616, 620 (Colo. 1987).

"For an issue to be actually litigated, the parties must have raised the issue in the prior action." *Bebo Const. Co. v. Mattox & O'Brien, P.C.*, 990 P.2d 78, 85 (Colo. 1999). This requires that the issue was properly raised (*i.e.*, "by appropriate pleading through a claim or cause of action"), submitted, and determined by the adjudicatory body. *Nat. Energy Res. Co. v. Upper Gunnison River Water Conservancy Dist.*, 142 P.3d 1265, 1280 (Colo. 2006) (quotations and citation omitted). The issue actually litigated also must be necessary to the judgment. *See In re Tonko*, 154 P.3d 397, 405 (Colo. 2007) (en banc). In addition, the party against whom issue preclusion is asserted must have had a full and fair opportunity to litigate the issue(s). *Id.* In making this determination, courts look to whether the remedies and procedures of the two proceedings are substantially different, whether the party had an incentive to vigorously litigate the issues, and the extent to which the issues are identical. *Elk Dance Colo., LLC*, 139 P.3d at 669.

---

[6] Plaintiff does not appear to challenge the privity of parties or finality elements of issue preclusion. Nevertheless, the court briefly notes that Plaintiff was a party to the underlying administrative proceeding and the CDHCPF issued a Final Agency Decision in the matter, thereby satisfying these two requirements. *See In re Hoffman*, 557 B.R. 177, 187 (Bankr. D. Colo. 2016) ("Administrative proceedings are entitled to preclusive effect where they constitute a final agency decision.").

Here, Defendants argue that the "issues Plaintiff raises now are identical in substance to those raised in the administrative action, only now the issues are framed differently to comport with the requirements of § 1983." [#42 at 9]. For example, the ALJ already addressed the adequacy of the July 2014 notice (Plaintiff's Claim IV); that the Trust was a countable asset (Plaintiff's Claim I); that Plaintiff failed to demonstrate that not electing against her husband's will was for fair consideration (Plaintiff's Claims II and V); and that Plaintiff must serve a fourteen-month ineligibility penalty beginning once the CDHCPF issues a Final Agency Decision (Plaintiff's Claim III). [*Id.* at 10]. In addition, Defendants contend that Plaintiff had a full and fair opportunity to litigate these issues at the underlying administrative proceeding. *See* [*id.* at 12].

Plaintiff responds that, although the issues in the administrative proceeding and this proceeding "may share facts," the issues actually litigated in the administrative proceeding are fundamentally different from those in this action. [#47 at 3]. This is because the issues in the administrative proceeding were whether a transfer without fair consideration occurred and, if so, how long of an ineligibility period would apply, not whether CDHCPF's regulations violate federal Medicaid law and Plaintiff's constitutional rights—the bases of this action. [*Id.*]. In addition, Plaintiff avers that she did not have a full and fair opportunity to litigate the issues in the administrative proceeding, because of the July 2014 notice's inadequacies. [*Id.* at 3–4].

Although Plaintiff's claims are similar to those alleged in the underlying administrative proceeding, the court concludes that the issues are not identical. Plaintiff's claims are broader than whether Defendants and the ALJ properly adjudicated her case under the applicable regulations. Rather, Ms. Kadingo challenges whether certain provisions of the Colorado Code of

Regulations, as promulgated by CDHCPF, violate federal rights created by the federal Medicaid statute. CHDCPF regulations explicitly prohibited the ALJ from considering the constitutionality or legality of the CDHCPF's regulations, even if they had been raised by Plaintiff. *See* 10 Colo. Code Regs. §§ 2505-10:8.057.8.D, E; *accord Ramey v. Rizzuto*, 72 F. Supp. 2d 1202, 1221 (D. Colo. 1999) ("A state agency's determination of procedural and substantive compliance with federal law is not entitled to the deference afforded a federal agency."). And the only way that Plaintiff can obtain any relief specific to her Medicaid benefits through this action is to prevail in proving that the CHDCPF regulations or policies violated a federal right.

Accordingly, the court concludes that the issues raised in the underlying administrative proceeding were not identical to those alleged in this action.[7] *See Toney v. Keil*, No. 13-CV-03386-CMA-MJW, 2014 WL 4800275, at *8 (D. Colo. Sept. 26, 2014) ("Issues are identical if the inquiry undertaken in both cases is identical and focuses on what ordinary members of the legal profession would have done at the time the action was taken."). Therefore, this court declines to dismiss Plaintiff's claims on issue preclusion grounds.

### B.    Claim Preclusion

Similarly, the court concludes that claim preclusion does not bar the majority of Plaintiff's theories in this matter. Specifically, the court concludes that generally, the injury pled

---

[7] The court also notes that there is some uncertainty as to whether Plaintiff had a full and fair opportunity to litigate the issues in the underlying administrative proceeding, given that the deficiencies in the July 2014 notice, the ALJ's determination as to the numerous deficiencies, the Defendants issuing of a new notice in June 2016 to cure those deficiencies, but the ALJ's refusal to substantively consider Plaintiff's appeal. *See Weaver v. Colorado Dep't of Soc. Servs.*, 791 P.2d 1230, 1232–33 (Colo. App. 1990) (holding that the termination of Medicaid benefits notices were legally inadequate under state and federal law for failing to include the specific regulations invoked).

16

giving rise to this proceeding is the violation of Plaintiff's federal rights as a result of Defendants' regulations, policies, and procedures rather than improper consideration of the merits under otherwise valid regulations, policies, and procedures. *See Houghton ex rel. Houghton v. Reinertson*, 382 F.3d 1162, 1167 n.3 (10th Cir. 2004) (noting that the plaintiff's failure to exhaust administrative remedies does not preclude the plaintiff from initiating a § 1983 case challenging revised Medicaid eligibility rules of the CDHCPF).

Under Colorado law, claim preclusion bars the re-litigation of matters already addressed or matters that could have been addressed in a prior proceeding. *See Criste v. City of Steamboat Springs*, 122 F. Supp. 2d 1183, 1186 (D. Colo. 2000). This includes claims stemming from the same injury for which relief is demand, whether or not the legal theory is identical. *See Loughridge v. Goodyear Tire & Rubber Co.*, 192 F. Supp. 2d 1175, 1187 (D. Colo. 2002). In addition, there are certain procedural requirements in the Medicaid context that may preclude a plaintiff from asserting claims challenging the CDHCPF's decision to terminate Medicaid benefits. Should a claimant object to an ALJ's initial decision, she must file "exceptions" to the initial decision with the CDHCPF within fifteen (15) days after service of the initial decision upon the parties. *See* Colo. Rev. Stat. § 24-4-105(14)(a)(i).[8] Following the issuance of a Final Agency Decision, a claimant may seek judicial review of the CDHCPF's decision in "[state] district court within thirty-five (35) days after such agency action becomes effective." *See* Colo. Rev. Stat. § 24-4-106(4). However, "[f]ailure to file exceptions . . . shall result in a waiver of the right to judicial review of the final order of such agency." Colo. Rev. Stat. § 24-4-105(c).

---

[8] Regardless of whether the CDHCPF receives exceptions to the ALJ's initial decision, it must review the initial decision before issuing a Final Agency Decision. *See* Colo. Rev. Stat. §§ 24-4-105(15), 25.5-1-107(1).

Here, Defendants argue that claim preclusion bars Plaintiff's claims in this proceeding. *See* [#42 at 13]. Specifically, the CDHCPF issued a Final Agency Decision that Plaintiff did not appeal; the subject matter is the same as the underlying administrative proceeding, *i.e.*, the Plaintiff's eligibility for Medicaid benefits; the injuries giving rise to Plaintiff's First Amended Complaint in this matter are the same as those alleged in the administrative proceeding; and that privity between the parties exists because the Jefferson County Department of Human Services acted as the CDHCPF's agent in the administrative proceeding. *See* [*id.* at 13–14]. Plaintiff responds that "[f]inality of the first judgment is again beside the point," as Plaintiff's claims in this proceeding are different than those alleged in the administrative proceeding and, similarly, the subject matter and identity of claims are distinct, as Plaintiff's claims contest the validity of Defendants' regulations under federal law—claims the ALJ does not have jurisdiction to consider. *See* [#47 at 5].

Briefly, the court concludes that the elements of finality, subject matter, and privity of parties are satisfied. First, the CDHCPF issued a Final Agency Decision on October 30, 2015, [#42-3], affirming the ALJ's initial decision.[9]  *See In re Hoffman*, 557 B.R. 177, 187 (Bankr. D. Colo. 2016) ("Administrative proceedings are entitled to preclusive effect where they constitute a final agency decision."). Next, the subject matter appears similar, *i.e.*, Plaintiff's eligibility for Medicaid benefits. *See generally Cruz v. Benine*, 984 P.2d 1173, 1176 (Colo. 1999). Lastly, identity of or privity between the parties exists, as Plaintiff was Appellant and the JCDHS (an

---

[9] Although Plaintiff appealed the new notice sent in June 2016, the ALJ has since dismissed that appeal on law of the case grounds, because the ALJ and the CDHCPF had already heard Plaintiff's case and issued a Final Agency Decision on the matter and because Defendants intended the new notice to cure the deficiencies of the July 2014 notice and did not intend the new notice to be appealable on the merits. *See* [#51-1 at 4–5]. Further, there is no indication in the record that Plaintiff appealed the ALJ's October 25, 2016 initial decision.

agent of the CDHCPF) was Appellee in the administrative proceeding and both Defendants (in

their official capacity as Directors of the JCDHS and the CDHCPF, respectively) are parties to

this suit.  *See id.* at 1179 (holding that status as an agent gives rise to the requisite privity for

claim preclusion purposes); *Nat. Energy Res. Co. v. Upper Gunnison River Water Conservancy

Dist.*, 142 P.3d 1265, 1281 (Colo. 2006) ("Privity exists when there is a substantial identity of

interests between a party and a non-party such that the non-party is virtually represented in

litigation.").  However, the court concludes that the identity of Plaintiff's claims for relief, for the

most part, is not the same as those in the underlying administrative proceeding.

     As mentioned, the injury giving rise to Plaintiff's claims is distinct from the claims

asserted in the underlying administrative proceedings, *i.e.*, the regulations and policies

promulgated and applied by Defendants and the ALJ violate Plaintiff's federal rights rather than

the failure by the ALJ to appropriately interpret or apply otherwise valid regulations to Plaintiff.

*See Argus Real Estate, Inc. v. E-470 Pub. Highway Auth.*, 109 P.3d 604, 608 (Colo. 2005)

(recognizing, "the 'same claim or cause of action requirement is bounded by the injury for which

relief is demanded, and not by the legal theory on which the person asserting the claim relies.'").

CDHCPF's own regulations bind ALJs to the CDHCPF's interpretations of statutes where the

CDHCPF has regulations implementing those statutes, and prohibits ALJs from considering legal

or constitutional challenges to the CDHCPF's regulations.  *See* 10 Colo. Code Regs. §§ 2505-

10:8.057.8.D, E.   Similarly, an agency has no jurisdiction to consider the legality or

constitutionality of its own organic act.  *See Colorado State Bd. of Accountancy v. Paroske*, 39

P.3d 1283, 1289 (Colo. App. 2001); Appealing an Administrative Order: The Exceptions

Process, Colo. Law., SEPTEMBER 2001, at 91 ("An agency has no authority to determine

whether acts of the legislature are constitutional on their face") [hereinafter Appealing an Administrative Order]. Accordingly, "the constitutionality of a statute need not be raised before the ALJ in order to preserve the issue for consideration by this court." *Pepper v. Indus. Claim Appeals Office of State*, 131 P.3d 1137, 1139 (Colo. App. 2005) (citations omitted) (citing cases holding the same). *See also* Appealing an Administrative Order at 91 (explaining that challenges to the constitutionality of an agency's regulations do not need to be raised to the ALJ or as exceptions to the agency to preserve the right of judicial review; however, all other contested legal or factual issues must be raised in exceptions). Thus, even if Plaintiff had alleged violations of her federal rights and sought to enforce those rights under § 1983 within the administrative context, neither the ALJ nor the CDHCPF could properly consider such challenges. *Cf. Loveland Essential Grp., LLC v. Grommon Farms, Inc.*, 318 P.3d 6, 10 (Colo. App. 2012) (observing that claim preclusion bars only claims alleged or that could have been alleged based on the same transaction, *i.e.*, facts related in time, space, origin, or motivation). Accordingly, "[t]he availability of state administrative procedures ordinarily does not foreclose resort to section 1983." *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 523 (1990); *Houghton*, 382 F.3d at 1167 n.3 (noting that the plaintiff's failure to exhaust administrative remedies does not preclude the plaintiff from initiating a § 1983 case challenging revised Medicaid eligibility rules of the CDHCPF).

To the extent that, in Claim III, Plaintiff alleges that "[t]he ALJ ignore the state regulations in this case and imposed his own personal standard of disqualification which was not authorized by law and constituted a fundamentally unfair and ultra vires hearing," such claim is precluded by claim preclusion, as Plaintiff could, and should, have raised such objections during

the ALJ proceeding or by filing exceptions.  Similarly, to the extent that Claim V relies upon the argument that Hubert Kadingo's transfer was the functional equivalent to the elective share trust under Colorado law, and the ALJ should have thus understood that the Kadingos' actions were not an attempt to qualify for Medicaid, but rather, only an attempt to conform to both state and federal law, such an argument should have been subject to exceptions.

But to the extent that Plaintiff contends that the regulations, procedures, or policies violate cognizable federal rights, the court concludes that claim preclusion does not bar Plaintiff's claims in this matter.  Consequently, Defendants' Motion to Dismiss is DENIED IN PART, as it seeks to dismiss Plaintiff's challenges to the Defendants' actions as violating federal rights, but GRANTED IN PART to the extent that Plaintiff attacks particular determinations made by the ALJ.[10]

### III.   Alternate Bases for Dismissal

Defendants also argue for dismissal of Plaintiff's claims for several additional reasons. First, Claims I, IV, and V fail to state a claim by misapprehending the laws supporting the Defendants' actions.  *See* [#42 at 14].  Second, Claims I, II, and III rely on provisions of the federal Medicaid statute that do not provide a private right of action under § 1983.  [*Id.* at 24]. The court considers these arguments by claim, starting with the question of whether there is a private right of action under 42 U.S.C. § 1983 (if applicable), because if there is no private right of action, a claim necessarily cannot be stated.

---

[10] The logical consequence of this holding is that if this court finds that the regulations do not violate Plaintiff's federal rights, then her claims necessarily fail as she is precluded in this action from arguing that the application of valid regulations to her particular circumstances was erroneous.

"Section 1983 creates a cause of action against anyone who, acting under color of state law, deprives a person of any "rights, privileges, or immunities secured by the Constitution and laws." However, not all violations of federal law are actionable under § 1983—a plaintiff "must assert the violation of a federal right, not merely a violation of federal law." *Blessing v. Freestone*, 520 U.S. 329, 340 (1997). In determining whether Ms. Kadingo can maintain a § 1983 action for violations of federal Medicaid provisions, the court must determine whether "Congress intended to confer individual rights upon a class of beneficiaries." *Hobbs ex rel. Hobbs v. Zenderman*, 579 F.3d 1171, 1179 (10th Cir. 2009) (quotations and citations omitted).

The Supreme Court identified three factors to help guide the court's inquiry: (1) Congress intended that the provision in question would benefit the plaintiff; (2) the plaintiff must demonstrate that the right allegedly protected "is not so vague and amorphous that its enforcement would strain judicial competence;" and (3) "the statute must unambiguously impose a binding obligation on the States," *i.e.*, the provision is "couched in mandatory, rather than precatory, terms." *Blessings*, 520 U.S. at 340–41. However, "an enforceable private right exists only if the statute contains nothing 'short of an unambiguously conferred right' and not merely a vague benefit or interest." *Mandy R. ex rel. Mr. & Mrs. R. v. Owens*, 464 F.3d 1139, 1147 (10th Cir. 2006) (quoting *Gonzaga Univ. v. Doe*, 536 U.S. 273, 283–84 (2002) (holding that Congress must use "rights-creating language" that unambiguously confers a right on the plaintiff)). If a plaintiff demonstrates that a private right exists, that right is presumptively enforceable under § 1983, unless Congress specifically foreclosed such a remedy. *See id. See also Wilder*, 496 U.S. at 520–21 (holding that Congress did not foreclose enforcement of the Medicaid Act under § 1983).

### A.  Claim I

As discussed, Claim I alleges that the Colorado Regulations and Defendants' policies that include certain types of transactions as transfers without fair consideration violate Plaintiff's federal rights under sections 1396p(c)(2)(B)(i) and (d)(2)(A), and is preempted by section 1396a(a)(18) of the federal Medicaid Act.  [#38 at 16–17].  The Colorado Code of Regulations implementing the federal Medicaid Act state:

> If an institutionalized individual or the spouse of such individual disposes of assets without fair consideration on or after the look-back period, the individual shall be subject to a period of ineligibility for Long-Term Care services, including Long-Term Care institution care, Home and Community Based Services (HCBS), and the Program of All Inclusive Care for the Elderly (PACE).

C.C.R. 2505-10 § 8.100.7.F.2.  The following actions create a "rebuttable presumption" that a transfer was without fair consideration:

> (ii)      Waiving a right to receive an inheritance;
> (iii)     Preventing access to assets to which an individual is entitled to by diverting them to a trust or similar device.   This is not applicable to valid income trusts, disability trusts and pooled trusts for individuals under the age of 65 years.
> (iv)      Failure of a surviving spouse to elect a share of a spouse's estate or failure to open an estate within 6 months after a spouse's death.
> (v)       Failure to obtain a family allowance or exempt property allowance for an estate of a deceased spouse or parent.  Such allowances are presumed to be available 3 months after death.

*Id.* at § 8.100.7.F.2.k(i), (iii)-(v).

### 1.     Section 1396p(c)(2)(B)(i).

*Misapprehension of Law*.   Ms. Kadingo alleges that Defendants' actions violate § 1396p(c)(2)(B)(i) of the Medicaid Act.  Defendants do not argue that this section does not

create a private right of action.[11]  Defendants instead argue that Claim I fails to state a claim

because Plaintiff erroneously believes that Defendants penalized her for being the beneficiary of

a testamentary trust when, in fact, Defendants penalized her for failing to elect against her

husband's will under Colorado's Medicaid regulations.  *See* [#42 at 14–15].  Specifically,

Defendants argue that section 1396p(c)(2)(B)(i) is inapplicable to Plaintiff's first claim for relief

because it does not affect Ms. Kadingo's Medicaid eligibility; rather, the provision would affect

her husband's Medicaid eligibility.  [*Id.* at 15].

Section 1396p(c)(2)(B)(i) provides:

(c) Taking into account certain transfers of assets . . . (2) An individual shall not
be ineligible for medical assistance by reason of paragraph (1) to the extent that--
. . . (B) the assets-- . . . (i) were transferred to the individual's spouse or to another
for the sole benefit of the individual's spouse."

42 U.S.C. § 1396p(c)(2)(B)(i).  Contrary to Plaintiff's assertion that "individual" necessarily

includes an individual's spouse, *see* [#47 at 6–7], the court agrees with Defendants that the plain

meaning of section 1396p(c)(2)(B)(i) indicates that an individual cannot be ineligible for

---

[11]  Defendants only challenge section 1396p(d)(2)(A) as not creating a federal right that is
enforceable under § 1983, because, although "Plaintiff cites several statutory provisions in her
first claim. . . . the gravamen of her claim is that federal law prohibits a testamentary trust from
counting as an asset for purposes of Medicaid eligibility . . . § 1396p(d)(2)(A)." [#42 at 25 n.5].
The two other provisions cited by Plaintiff include § 1396p(c)(2)(B)(i), which the court
concludes is inapplicable to Plaintiff's case, and § 1396a(a)(18).  *See* [#38 at 15].  Because
Defendant does not challenge these provisions, the court does not consider them, but notes that
guidance from other districts suggests that both sections confer a federal right that is enforceable
under § 1983.  *See, e.g.*, *Lewis v. Rendell*, 501 F. Supp. 2d 671, 687 (E.D. Pa. 2007) (holding that
§ 1396a(a)(18) confers a federal right on the plaintiff); *Johnson v. Guhl*, 91 F. Supp. 2d 754,
768–70 (D.N.J. 2000) (same); *Hughes v. Colbert*, 872 F. Supp. 2d 612, 620–21 (N.D. Ohio
2012) (holding that § 1396p(c)(2)(B)(i) conferred federal right on the plaintiff), *rev'd on other
grounds Hughes v. McCarthy*, 734 F.3d 473 (6th Cir. 2013); *Bernard v. Kansas Health Policy
Auth.*, No. 09-1247-JTM, 2011 WL 768145, at *5, *9–10 (D. Kan. Feb. 28, 2011) (same).
Defendants make no separate argument based on 42 U.S.C. § 1396a(a)(10), and note that that
section "merely requires Colorado's Medicaid State Plan to comply with 42 U.S.C. § 1396p."
[#42 at 15 n.1].  Accordingly, this court does not substantively address that section.

transferring assets to her spouse for the spouse's sole benefit, which, in this case, would be applicable only to Hubert Kadingo.  *See United States v. Villa*, 589 F.3d 1334, 1343 (10th Cir. 2009) ("In interpreting a statute, we start with its language . . . giving effect to its "'most natural reading.'").   Indeed, if the term "individual" also included the "individual's spouse," the language of subsection (i) would be completely extraneous.  The First Amended Complaint is clear that Plaintiff never transferred any assets to Hubert Kadingo; instead, Plaintiff's husband transferred assets to the Trust for Plaintiff's sole benefit, which does not affect Plaintiff's eligibility for Medicaid under section 1396p(c)(2)(B)(i).   Therefore, to the extent that Claim I relies on a purported violation of § 1396p(c)(2)(B)(i), such a theory does not state a cognizable claim.

### 2.    Section 1396p(d)(2)(A).

***Private Right of Action.***    Section 1396p(d)(1) provides that determination of an individual's Medicaid eligibility may depend on assets contained in certain trusts that the individual is the beneficiary of.  Section 1396p(d)(2)(A), excludes testamentary trusts from such consideration, and reads

> For purposes of this subsection, an individual *shall be considered* to have established a trust if assets of the individual were used to form all or part of the corpus of the trust and if any of the following individuals established such trust *other than by will*:
>
> (i) The individual.
> (ii) The individual's spouse.
> (iii) A person, including a court or administrative body, with legal authority to act in place of or on behalf of the individual or the individual's spouse.
> (iv) A person, including any court or administrative body, acting at the direction or upon the request of the individual or the individual's spouse.

42 U.S.C. § 1396p(d)(2)(A) (emphasis added).  Defendants argue that section 1396p(d)(2)(A) does not create federal rights that give rise to a private right of action, because it fails the first and third prongs of the *Blessing* test.  [#42 at 25–26].  First, the language of this section directs states on which trusts it can and cannot consider for purposes of Medicaid eligibility, and does not confer an individual right.  [*Id.* at 26–27].  Next, the language does not "unambiguously impose a binding obligation on the state."  [*Id.* at 27].  In support of their contention, Defendants rely on *Hobbs ex rel. Hobbs v. Zenderman* where the United States Court of Appeals for the Tenth Circuit ("Tenth Circuit") held that section 1396p(d)(4)(A) did not create a federal right enforceable under § 1983.  579 F.3d at 1179–80.  In *Hobbs*, the Tenth Circuit explained that section 1396p requires States to consider certain trust assets when determining an individual's Medicaid eligibility, and concluded that section 1396p(d)(4) exempts certain trusts from a State's consideration, but does not impose an unambiguous obligation to do so.[12]  *See id.* (relying on the Tenth Circuit's holding in *Keith v. Rizzuto*, 212 F.3d 1190, 1193 (10th Cir. 2000), which held that section 1396p(d)(4)(B) (regarding income trusts) did not impose a binding obligation on States to exempt income trusts from eligibility considerations).  According to Defendants, the testamentary trusts in section 1396p(d)(2)(A) function in the same manner as trusts under section 1396p(d)(4)(A), *i.e.*, that States *may* exempt them from consideration.  [#42 at 27].

The court concludes that *Hobbs* is inapposite to the case at bar, and finds the reasoning in *Bernard v. Kansas Health Policy Authority*, No. 09-1247-JTM, 2011 WL 768145, at *5, *9–10 (D. Kan. Feb. 28, 2011), more persuasive, as it explicitly considered the creation of a federal

---

[12]  The Tenth Circuit did acknowledge, however, that at first glance the language of § 1396p(d)(4) "might have been read . . . to require States to exempt special needs trusts [under § 1396p(d)(4)(A)]," but "that construction is foreclosed by our opinion in *Keith*."  *Hobbs*, 579 F.3d at 1180.

right under section 1396p(d)(2)(A), which has not been considered by the Tenth Circuit.   In *Bernard*, the court held that the language of section 1396p(d)(2)(A)(ii) satisfied all prongs of the *Blessing* test.   2011 WL 768145, at *11.   Specifically, the court concluded that "Congress intended the provision to benefit the plaintiff by providing how an individual's trust assets will be considered by the state;" that the language was stated in mandatory terms, *i.e.*, "an individual *shall be considered* to have established a trust;" and that the provision's terms were not so "vague or amorphous" that their enforcement "would strain judicial competence."   *Id.* (distinguishing sections 1396p(d)(2)(A)(ii) and (B)'s terms from the vague and ambiguous terms found in *Blessing*, 520 U.S. at 342 ("substantially comply"), *Gonzaga*, 536 U.S. at 288 ("comply substantially"), and *Suter v. Artist M.*, 503 U.S. 347, 358 (1992) ("reasonable efforts")).   Further, the court distinguished *Hobbs* and concluded that neither Congress nor the statutory structure of the Medicaid Act precluded the plaintiff's from maintaining a § 1983 action under this provision. *Id.* at 12–13.

Defendants assert that *Bernard* "ignores the language that creates a discretionary exclusion that parallels the discretionary exclusion critical" to the Tenth Circuit's holding in *Hobbs*.   [#42 at 28].   However, this court respectfully disagrees, as the Trust created was a testamentary trust (not a special needs trust under section 1396p(d)(4)(A)), which section 1396p(d)(2)(A) specifically excludes from consideration.   Moreover, this court notes that *Bernard* is not alone in determining that section 1396p(d)(2)(A) confers an enforceable federal right under § 1983, and has been cited as persuasive authority in other federal districts.   *See e.g.*, *Hughes v. Colbert*, 872 F. Supp. 2d 612, 621 (N.D. Ohio 2012) (holding that section 1396p(d)(2)(A)(ii) confers a federal right), *rev'd on other grounds Hughes v. McCarthy*, 734

F.3d 473 (6th Cir. 2013); *Ctr. for Special Needs Trust Admin., Inc. v. Olson*, No. 1:09-CV-072, 2011 WL 1562516, at *13 (D.N.D. Apr. 25, 2011) (finding *Bernard* persuasive in concluding that section 1396p(d)(4)(C) creates an enforceable federal right), *aff'd*, 676 F.3d 688 (8th Cir. 2012) (citing *Bernard*).

*Misapprehension of Law.*   Defendants next argue that § 1396p(d)(2)(A) is also inapplicable, because Defendants did not impose an ineligibility period based on the trust created by Hubert Kadingo, but rather based on Ms. Kadingo's failure to elect to take her spousal share of her husband's estate or claim the family or exempt property allowance, as required.  However, the court respectfully disagrees with Defendants' arguments that section 1396p(d)(2)(A) is necessarily inapplicable to Plaintiff's first claim, because Claim I plausibly states a claim that Defendants' regulations and policies violate Plaintiff's federal rights under this section by requiring a spouse to elect their spousal share and claim the family allowance, thereby foregoing their rights to be benefactors of exempt trusts.  *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (observing that plausibility refers to the scope of the allegations in the complaint and if those allegations "nudge" the plaintiff's claims across the line from conceivable to plausible).

As quoted above, section 1396p(d)(2)(A) exempts from Medicaid eligibility considerations assets contained in a testamentary trust.  42 U.S.C. § 1396p(d)(2)(A).  This court is not persuaded that the claim is not cognizable simply because the Kansas Supreme Court upheld a similar Kansas Medicaid regulation regarding transfers without fair consideration.  [#42 at 17 (citing *Miller v. State Department of Social and Rehabilitative Services*, 64 P.3d 395 (Kan. 2003))].  While the record may ultimately reveal that no violation of Plaintiff's federal rights under this provision occurred and that the *Miller* decision may be persuasive (though not

controlling), the court draws all reasonable inferences in favor of Plaintiff and does not consider the merits of Plaintiff's claims at this phase. Therefore, Defendants' Motion to Dismiss as to Claim I is GRANTED IN PART and DENIED IN PART; to the extent that Claim I asserts a violation of 42 U.S.C. § 1396p(d)(2)(B) (and in turn, 42 U.S.C. § 1396a(a)(18)), it may proceed.

## B. Claim II: Section 1396p(c)(1)(E)(i)(I)

***Private Right of Action.*** Defendants argue for dismissal of Claim II because § 1396p(c)(1)(E)(i)(I) does not confer a federal right that Plaintiff can enforce under § 1983. [#42 at 28]. Specifically, this provision specifies how to calculate an applicable ineligibility period based on a transfer of assets for less than fair market value; thus, there is no "rights-creating language" or a binding obligation on the state. [*Id.* at 29]. For the following reasons, the court respectfully agrees.

Section 1396p(c)(1)(E)(i)(I) reads

(c) Taking into account certain transfers of assets . . .
(E)(i) With respect to an institutionalized individual, the number of months of ineligibility under this subparagraph for an individual shall be equal to--
(I) the total, cumulative uncompensated value of all assets transferred by the individual (or individual's spouse) on or after the look-back date specified in subparagraph (B)(i) . . .

42 U.S.C. § 1396p(c)(1)(E)(i)(I). Although the court is unaware of any court specifically considering whether this provision confers a federal right, guidance from within this Circuit suggests that section 1396p(c)(1)(A) does not confer a federal right. *See Lemmons v. Lake*, No. CIV-12-1075-C, 2013 WL 1187840, at *3 (W.D. Okla. Mar. 21, 2013) ("Plaintiff's claim under § 1396p(c)(1) likewise fails because neither § 1396p(c)(1)(A) nor § 1396p(c)(1)(I) includes the "rights-creating" language indicating congressional intent to invoke an individual entitlement for a certain benefitted class."), *vacated as moot*, No. CIV-12-1075-C, 2013 WL 6913757 (W.D.

Okla. June 28, 2013); *Bernard*, 2011 WL 768145, at *8 ("Regarding plaintiff's claim under 42

U.S.C. § 1396p(c)(1)(A), this court concludes that the statute does not support a § 1983 claim

because it does not unambiguously confer rights on the plaintiff."); *but see Dultz v. Velez*, 726 F.

Supp. 2d 480, 490 (D.N.J. 2010) (holding that section 1396p(c)(1) is couched in mandatory,

rights-creating language that imposes a binding obligation on the States as to how they can

assess an ineligibility penalty against the individual); *Aplin v. McCrossen*, No. 12-CV-6312FPG,

2014 WL 4245985, at *21 (W.D.N.Y. Aug. 26, 2014) (same).  Similar to the courts in *Lemmons*

and *Bernard*, this court concludes that section 1396p(c)(1)(E)(i)(I) does not confer a federal right

enforceable under § 1983.

> Section 1396p(c)(1)(A) reads, in relevant part,

> In order to meet the requirements of this subsection for purposes of section
> 1396a(a)(18) of this title, the *State plan* must provide that if an institutionalized
> individual . . . disposes of assets for less than fair market value . . . the individual
> is ineligible for medical assistance . . . during the period beginning on the date
> specified in subparagraph (D) and equal to the number of months specified in
> subparagraph (E).

42 U.S.C. § 1396p(c)(1)(A) (emphasis added).  As the courts noted in both *Lemmons* and

*Bernard*, this provision imposes a binding obligation on the states as to how each is to calculate a

period of ineligibility based on an individual's transfer of assets for less than fair market value.

*See generally Bernard*, 2011 WL 768145, at *8 ("Rather than conferring a benefit on the

plaintiff, the statute imposes a binding obligation on the state to impose a plan which makes an

individual ineligible for medical assistance if the person or person's spouse disposes of assets for

less than fair market value.").  Further, this provision directs states to calculate a penalty "equal

to the number of months specified in subparagraph (E)" and, although subparagraph (E)(i)(I)

speaks in terms of "individuals," it does so "only in relation to imposing an obligation on the

states" on how they shall calculate a period of ineligibility. *Id.* at *8–9 (comparing this language to similar language in other statutes that the Supreme Court found did not confer a federal right to the plaintiff, but rather, focused on the states implementation of federal law).   Accordingly, because section 1396p(c)(1)(E)(i)(I) does not unambiguously confer a federal right on the Plaintiff, Defendants' Motion to Dismiss is GRANTED as to Claim II.

### C.  Claim III: Section 1396p(c)(1)(D)(ii)

*Private Right of Action.*   Defendant also seeks dismissal of Claim III because the section of the Medicaid Act upon which it relies fails to confer a private right of action upon Ms. Kadingo.  [#42 at 30–32].  For the same reasons discussed in detail above, the court respectfully agrees.  Section 1396p(c)(1)(D)(ii) reads

> (ii) In the case of a transfer of asset made on or after February 8, 2006, the date specified in this subparagraph is the first day of a month during or after which assets have been transferred for less than fair market value, or the date on which the individual is eligible for medical assistance under the State plan and would otherwise be receiving institutional level care described in subparagraph (C) based on an approved application for such care but for the application of the penalty period, whichever is later, and which does not occur during any other period of ineligibility under this subsection.

42 U.S.C. § 1396p(c)(1)(D)(ii).  Again, this provision focuses on the states and dictates how each is to calculate a period of ineligibility based on an individual's transfer of assets for less than fair market value. *See id.* § 1396p(c)(1)(A).  This does not unambiguously confer a federal right on the Plaintiff. *See Lemmons*, 2013 WL 1187840, at *3; *Bernard*, 2011 WL 768145, at *8. Accordingly, Defendants' Motion to Dismiss is GRANTED as to Claim III.

**D.  Claim IV:  Section 1396a(a)(3) and the Fourteenth Amendment**

*Misapprehension of Law.*[13]  Defendants argue that Plaintiff misapprehends the nature of

the regulations she seeks to have declared unconstitutional and misconstrues the requirements of

due process.  [#42 at 22].  Defendants maintain that the regulations do not prevent claimants

from raising constitutional challenges in their exceptions to the CDHCPF or upon judicial review

of a final agency decision, and that due process does not require that Plaintiff be afforded the

opportunity to raise constitutional challenges "*during the administrative hearing*."  [*Id.* at 24

(emphasis in original)].

       As an initial matter, Defendant cites no authority for its proposition that the CDHCPF can

properly consider constitutional challenges to its own regulations.  In fact, relevant case law

suggests the opposite.  *See, e.g.*, *Cerbo v. Protect Colorado Jobs, Inc.*, 240 P.3d 495, 504 (Colo.

App. 2010) (holding that agencies cannot consider facial constitutional challenges).  Nor do

Defendants cite any authority that suggests constitutional challenges must be raised in the

context of judicial review of a final agency action or are otherwise forfeited.  And, to the extent

that Defendants contend that the regulation is valid, because due process does not require that

Plaintiff be afforded the opportunity to raise constitutional challenges during the administrative

hearing, that argument is more appropriate for this court to consider in the context of the merits

of the claim rather than whether the claim sufficiently alleges a plausible claim for relief.  *See*

*Weaver v. Colorado Dep't of Social Servs.*, 791 P.2d 1230, 1232–33 (Colo. App. 1990) (holding

as legally inadequate for purposes of due process termination of Medicaid benefits notices that

failed to include the specific regulations invoked); *see also Monez v. Reinertson*, 140 P.3d 242,

---

[13] Defendants do not argue that Claim IV fails because there is no private right of action under
either 42 U.S.C. § 1396a(a)(3) or the Fourteenth Amendment.

247 (Colo. App. 2006) (holding that 42 U.S.C. § 1396a(a)(3) created an enforceable private right to a "fair hearing" under § 1983). Indeed, "[w]hether [Plaintiff's] claim[s] can ultimately survive scrutiny at the summary judgment stage is a matter the Court does not address at this time." *Rader v. Elec. Payment Sys.*, LLC, No. 11-CV-01482-MSK-CBS, 2012 WL 4336175, at *6 (D. Colo. Sept. 21, 2012). Accordingly, Defendants' Motion to Dismiss is DENIED as to Claim IV.

### E. Claim V

*Misapprehension of Law.*[14]  Plaintiff alleges that Defendants' policy and practice of assessing a transfer penalty and requiring individuals to elect against their spouses will and forego their rights to be benefactors to exempt testamentary trusts [#38 at ¶¶ 106-108] violates section 1396p(c)(2)(C). Specifically, Plaintiff seeks to invalidate 10 C.C.R. 2505-10, 8.100.7.F.2.j.ii, iii, iv and v of the Colorado Code of Regulations, and all actions taken by Defendants thereunder. Similar to Claim I, Defendants aver that section 1396p(c)(2)(C) is inapplicable to Plaintiff's case because Defendants imposed the ineligibility period based on the transfer without fair consideration regulation, not because of the creation of a testamentary trust; thus, Plaintiff will not receive the relief she demands because her ineligibility period was triggered by her failure to elect against her husband's will. [#42 at 18–20]. In addition, Claim V fails because a testamentary trust and an elective-share trust are not functionally equivalent as a matter of law. [*Id.* at 20–22]. This is because testamentary trusts are immune from Medicaid eligibility consideration whereas elective-share trusts are not. [*Id.* at 21–22].

Section 1396p(c)(2)(C) provides that an individual shall not be ineligible for medical assistance to the extent that,

---

[14] Defendants also do not argue that Claim V fails because there is no private right of action under 42 U.S.C. § 1396p(c)(2)(C).

> a satisfactory showing is made to the State (in accordance with regulations promulgated by the Secretary) that (i) the individual intended to dispose of the assets either at fair market value, or for other valuable consideration, (ii) the assets were transferred exclusively for a purpose other than to qualify for medical assistance, or (iii) all assets transferred for less than fair market value have been returned to the individual.

42 U.S.C. § 1396p(c)(2)(C). Although this court's reading of the regulations targeted by Plaintiff, namely 10 C.C.R. 2505-10, 8.100.7.F.2.j.ii, iii, iv and v, do not suggest that they violate section 1396p(c)(2)(C) (as they both contemplate that an individual can make a showing within the context of an administrative hearing to establish that a transfer was not without fair consideration), such argument was not made by Defendants and appears more appropriate for consideration on the merits.[15] Therefore, Defendants' Motion to Dismiss as to Claim V is DENIED, except as to the arguments made with respect to the equivalence of Mr. Kadingo's trust to an elective share trust as discussed above.

## CONCLUSION

Based on the reasons stated herein, **IT IS ORDERED** that:

(1)     Defendants' Motion to Dismiss [#42] is **GRANTED IN PART and DENIED IN PART**;

(2)     Plaintiff's Claim I **REMAINS,** only to the extent it seeks to challenge Defendants' regulations, policies, and practices as violations of Plaintiff's federal rights under 42 U.S.C. §§ 1396p(d)(2)(A), 1396a(a)(18);

(3)     Plaintiff's Claim IV **REMAINS**;

---

[15] The court notes that contrary to Defendants' argument that a decision could not yield the relief sought by Ms. Kadingo, should the court ultimately conclude that Defendants violated Plaintiff's federal rights under this provision, Plaintiff would in fact receive the relief she requests—a declaration foreclosing Defendants from asserting the fourteen-month ineligibility period on the basis of its transfer without fair consideration regulation.

(4)     Plaintiff's Claim V **REMAINS**, only to the extent it seeks to challenge Defendants' regulations, policies, and practices as violations of Plaintiff's federal rights under 42 U.S.C. § 1396p(c)(2)(C) and not to the extent it seeks to challenge the equivalence of Hubert Kadingo's testamentary trust to that of an elective share trust;

(4)     The remaining claims, including Plaintiff's Claims II and III in their entirety, are **DISMISSED**;

(5)     The deadline for dispositive motions is **SET** for February 24, 2017, consistent with the Minute Order dated December 13, 2016 [#58].

DATED: January 26, 2017                    BY THE COURT:

                                          s/ Nina Y. Wang
                                          United States Magistrate Judge